In re Estate of LOLY E. SCHOLES.

**APPEAL AND ERROR:  General Denial of Appellants' Abstract—
1  Futility of Presumption as to Record.**  Appellee's general denial of appellants' abstract availeth nothing in the way of overthrowing the presumption that sufficient of the record is before the court to enable the court to pass on the questions presented. (Sec. 4118, Code 1897.)

PRINCIPLE APPLIED:  Appellee denied that appellants' abstract, plus appellee's amendment, contained all the material evidence upon which to determine the case.  Appellee also made a showing, by affidavit, that other evidence had been taken, but the nature thereof was not indicated. *Held,* the general denial availed nothing and was not in any degree helped by the affidavit, and the above presumption would be indulged in.

**EXECUTORS AND ADMINISTRATORS:  Claims—Fraudulent Al-
2  lowance—Vacation of.**  The allowance, even on formal hearing before the court, of claims against the estate of the dead, is subject to special and distinctive scrutiny for fraud and collusion.

PRINCIPLE APPLIED:  The deceased died July 2d.  On September 2d following, a daughter was appointed executrix.  On the day of her appointment, she asked the court to appoint a special administrator to pass on a claim which she asserted she had against the estate.  Two days later, she filed a claim against the estate for $2,902.00 for alleged services in caring for her aged mother during the twelve years preceding her death.  Two days after the filing of the claim, the clerk of the court was appointed special administrator.  He was not an attorney and made at best but a perfunctory investigation of the claim.  On the day of his appointment, he reported to the court that he believed the claim to be well founded but did not wish to allow the same without the

approval of the court. Later, again, on the same day, the claimant appeared before the court by her attorneys, along with the special administrator *pro se*, a jury was waived and the matter was formally tried and the claim allowed in full. All the other sons and daughters of deceased lived outside of the state, and at the time knew nothing of the appointment, the filing of the claim, or its allowance. On timely application to set aside the allowance, it appeared that the claim was largely erroneous, unjust and materially and intentionally false. *Held*, the allowance should be set aside for fraud, notwithstanding the formal hearing.

*Appeal from Adair District Court.*—HON. W. H. FAHEY, Judge.

FRIDAY, APRIL 9, 1915.

APPLICATION to set aside an order for the allowance of a claim in probate was denied and the applicants appeal.— *Reversed.*

*H. J. Chapman,* for appellants.

*Musmaker & Williamson* and *Frank B. Wilson,* for appellee.

LADD, J.—George Scholes died testate at Henry, Ill., in 1895, leaving a widow, Loly E. Scholes, and four children, Walter and William Scholes, Elizabeth Wilmot and Fausta C. Faris. The estate left consisted of a 160-acre farm and nearly $9,000 in notes, moneys and other personal property and was taken in possession by the widow under the will. A mortgage on the farm and other debts were satisfied out of this. She died testate July 2, 1913, bequeathing a note of $600 to Mrs. Faris and a note of $650 to Walter Scholes, and directing that the residue pass to the children and a grandson share and share alike, as provided in the will of her deceased husband. Mrs. Faris was nominated executrix and September 2, 1913, she was appointed such by the court and duly qualified. On the same day, she filed her petition praying for the appointment of a temporary administrator "to pass on the claim of the

executrix in said estate." The claim was filed two days later, in words following:

"For care and custody of Loly E. Scholes, at her special instance and request from June 1st, 1901 to January 1st, 1911, a period of 498 weeks which services were of the reasonable value of $4.00 per week, and from January 1st, 1911 to July 1st, 1913, a period of 130 weeks which services were of the reasonable value of $7.00 per week making the total sum due the sum of $2,902.00."

The clerk of court was appointed special administrator September 6, 1913, and on the same day filed his report:

"That I have made an investigation of the merits of the claim filed by Fausta C. Faris, in the amount of $2,902; and believe that the said claim is well founded, but do not wish to allow the same without the approval of the Court.

"I therefore respectfully request the Court to pass on said claim."

On the same day, according to the record, the claimant appeared by attorneys and the special administrator *pro se,* a jury was waived and evidence introduced, and three days later, an order was entered establishing the claim in the full amount of $2,902 against the estate. On November 11th of the same year, the other three children filed an application that the allowance be set aside, reciting the foregoing facts and alleging want of notice on their part, that the claim was excessive and for time when deceased was living with others of the children; that she had an income of about $1,000 annually and paid her own expenses and required no care except during the last six months of her life; that the temporary administrator never investigated or passed on the claim, and for this reason, the order of allowance should be set aside, and for that it is a fraud on these applicants and on the court. The application was supported by affidavits and resisted in

the same manner. It appears therefrom that the decedent was eighty-seven years of age at the time of her death, that from the time of her husband's death, in 1895, she enjoyed an income of about $1,000 a year, that Mrs. Faris first lived with her mother in Illinois and later the mother came to her home in Greenfield, in 1899, that thereafter she passed considerable of the time with Mrs. Wilmot in Colorado, visited her son William in South Dakota twice for several weeks each time, stayed with her son Walter and a grandson in Chicago over four weeks, with Walter in Des Moines two weeks, visited relatives in Illinois five weeks, and a sister in Kansas nearly three months, was in California six months from November 1, 1904, and that she paid the household expenses of Mrs. Faris when staying with her and when they traveled together. Even the showing of Mrs. Faris indicates that the account allowed was incorrect, and she does not deny the claim that her mother, when with her, paid the household expenses.

The showing is conclusive that the allowance was greatly in excess of any just claim Mrs. Faris may have had against the estate and should be set aside, unless the record is such as to preclude so doing.

I. Appellee denies that the abstract with her amendment thereto contains all the material evidence upon which to determine the case and, after setting out different items of evidence said to have been adduced, sets out two affidavits, one by the party appointed temporary administrator, saying that he was duly sworn at the hearing hereof and testified that five witnesses were examined on the trial wherein the claim was allowed and to other matters and identified exhibits, and the other saying that he also testified. The testimony of these witnesses appears to have been taken down in shorthand, but there is nothing in the record indicating that what they may have said had any material bearing on the issues being tried. The affidavits in no way aided the general denial mentioned, and we must assume that enough of the

1. APPEAL AND ERROR: general denial of appellants' abstract: futility of: presumption as to record.

record is before the court to enable us to pass on the questions presented. See *Howerton v. Augustine,* 145 Iowa 246; *Palmer v. Clark,* 114 Iowa 558; *State v. Poder,* 154 Iowa 686.

II. Where a claim is allowed by the court without hearing upon the approval or recommendation of an administrator or executor, the order may be set aside on motion supported by a showing that the amount allowed

2. EXECUTORS AND ADMINIS-TRATORS: claims: fraudulent allowance: vacation of.

is erroneous, unjust and inequitable. *Rabbett v. Connolly,* 153 Iowa 607, 614, and cases cited. The allowance is in effect merely an order on administrator to pay the claimant from the funds of an estate, and is more in the nature of an adjustment than an adjudication. The investigation leading up to this is not so much for the purpose of compelling satisfaction as to ascertain the truth and justice of the particular claim. *Voorhies v. Eubank,* 6 Iowa 274. And the action of the court in entering an order allowing a claim approved or recommended by the administrator is not based on an inquiry into and findings of facts on issues presented by the court, but on the conclusion reached by the officer. Where, however, the claim is not approved by the administrator, and issues joined thereon are submitted to and determined by the court, a different rule applies. The adjudication is then as definite and binding on the parties as though a judgment entered in an ordinary action. This was determined in *McLeary v. Doran,* 79 Iowa 210, cited with approval in *Ryan v. Hutchinson,* 161 Iowa 575. "If a claim filed against the estate is not fully admitted by the executor or administrator, the court may hear and allow the same or may submit it to a jury, and on the hearing, unless otherwise provided, all provisions of law applicable to an ordinary action shall apply."

A trial of issues, under these circumstances, should be and is regarded as conclusive unless a just conclusion has been obviated by fraud or collusion. In ascertaining whether fraud has been practiced, however, the situation of the parties is an important matter to take into consideration. The party

whose estate is sought to be charged cannot furnish the information which only those to the transaction possess, and notwithstanding the limitations of the claimant's right to give testimony, the representative of the deceased often labors under peculiar disadvantages, and this is especially true where the administrator is claimant and one unfamiliar with the affairs of deceased is designated special administrator for the purpose of making defense. For this reason, courts will closely scrutinize all proceedings leading up to the allowance of claims of this kind and, in weighing proof of the fraud therein alleged, will take into account the relative situation of the parties, the nature of the proceedings and the result in view of the present showing concerning the facts. In the case at bar, a claim was presented which, according to the present showing, was in large part unfounded. It was presented by the administratrix, whose duty it was to protect the estate, not plunder it. The amount was sufficient to absorb a large part of the estate and was of a nature exacting a skilled defense. A person having no interest in the estate and not a lawyer was designated special administrator. He must necessarily have made but a perfunctory investigation and without counsel proceeded to trial at once. All the heirs other than the administratrix lived outside of the state and so far from the place of hearing that knowledge of the appointment of Mrs. Faris as administratrix could scarcely have reached them (she was appointed Sept. 2nd and the trial occurred on the 6th), to say nothing of learning of the filing of the claim. Nor was it expected that they should know. She had applied for the designation of a special administrator the very day of her appointment and two days prior to the filing of her claim. The claim showed on its face that the items were of a kind likely to be contested, and there is no other rational explanation of the transaction than that the design of the administratrix was to cut off all defense by taking snap judgment for an amount she well knew was erroneous and unjust. In other words, she undertook to perpetrate a fraud on the heirs by robbing the estate, and this

before they had an opportunity to defend through the special administrator, and this she accomplished by procuring the appointment of a person as such incompetent to defend and who joined her in submitting the claim to the court without adequate investigation and at a time those interested in the estate knew not of the claim and might not defend. She thereby perpetrated a fraud on the court and, had collusion been charged, we should have had little trouble in finding that the special administrator played into her hands and joined in her enterprise. If not, what was his purpose in proceeding without investigation and without consulting those directly interested? Something is said about one of the heirs obtaining possession of notes of the estate by a trick. If so, this did not justify the claimant in perpetrating a fraud on the court by procuring the allowance of an unjust claim. This case is to be distinguished from *Hendron v. Kinner*, 110 Iowa 544, in which no defense was shown and no undue haste exhibited. We are of the opinion that the order should have been set aside and the heirs accorded a hearing on the claim.—*Reversed*.

Deemer, C. J., Gaynor and Salinger, J. J., concur.