# M. SIGBERT AWES COMPANY, a Corporation, v. T. A. HASLAM.

### (163 N. W. 265.)

**Specific performance — contract — action for — reformation of contract — true agreement — intention of parties — may be had in same action — fraud — mistake of fact — in execution of — proof of.**

In an action for the specific performance, the contract sued upon may be reformed to conform to the true agreement upon proper proof of fraud or mistake of fact in its execution; and if, on the trial, the proof does not justify relief under the contract as reformed, the action may be properly dismissed.

Opinion filed February 27, 1917. Rehearing denied June 2, 1917.

Action for the specific performance of a contract.

Appeal from the District Court of Ramsey County, Honorable *C. W. Buttz,* Judge.

Judgment for the defendant. Plaintiff appeals.

Affirmed.

Statement of facts by BRUCE, Ch. J. This is an action for the specific performance of a contract for the sale of certain land on an alleged price of $10,000. The answer, among other things, alleges that on or about April 5th, 1915, the defendant listed for sale with the plaintiff as agent, the property described and at the time of said listing a written memorandum was made of the terms thereof, which memorandum was intended by both plaintiff and defendant to conform to the terms of said listing, and to contain all of the terms of the agreement of listing as made by plaintiff and defendant, but through mutual mis-

---

Note.—On effect of mistake of fact by defendant on right to the specific performance of a contract induced thereby, see note in 15 L.R.A.(N.S.) 81.

On failure to read contract before signing, see note in 115 Am. St. Rep. 626.

take on the part of both parties said written memorandum failed to embody all of the terms of said agreement between the parties in this, —that it was a part of said listing agreement, and expressly understood by plaintiff and defendant that, if a sale of said real estate was to be made by plaintiff, acting as agent for defendant, said sale must have been consummated on or before July 1, 1915, if the same was to include the crops sown and grown upon said premises, and if said sale was not consummated on or before said date it was mutually agreed that the price at which said property was listed was not to include said crops, but that the same would on that date, if no sale was consummated before that time, remain the property of the defendant, to be severed and appropriated by him for his own personal use and benefit . . . —and it was understood and agreed by both parties that the terms of said agreement and understanding with reference to said crops was incorporated in and made a part of such written memorandum; and it was understood by both parties and supposed that said memorandum did contain the true agreement made by the parties, including the provisions with reference to said crops, until shortly before the commencement of this action, when it was discovered that, through a mutual mistake and error in preparing the said memorandum, the provision above referred to was not included therein.

The answer also prays that said agreement "and memorandum made between plaintiff and defendant and above described be reformed by inserting therein the real agreement of the parties and the provisions and stipulations with reference to the crops and the date of the termination of said offer for sale, and that the plaintiff's complaint be dismissed, and that the defendant be allowed his costs."

The learned trial court found, among other things, "that prior to the execution and delivery of said instrument plaintiff's agent Dryden and the defendant talked over and agreed upon the terms of listing of said property, and also of other property, and at same time defendant decided to list and did list the property in question he listed three other several tracts of land with plaintiff for sale as follows:

"The northwest quarter and west half of the northeast quarter of section 36, and lots 1 and 2 in section 36, and lots 1 and 2 in section 35, in township 151, range 62, containing 286.82 acres, none of which tract was under cultivation, listed for net price of $20 per acre.

"The southeast quarter of section 23, township 151, range 62, containing 160 acres, all of which was under cultivation, listed for a net price of $22.50 per acre, or if sold before July 1, 1915, including the 1915 crop, for $25 per acre.

"The west half of section 18, township 151, range 61, containing 300 acres, of which 190 acres was under cultivation, listing for a net price of $22.50 per acre, or, if sold before July 1, 1915, including 1915 crop, for $25 per acre.

"That each of said foregoing tracts was listed for a period of seven months, and each contained a reservation in defendant of the right to effect a sale himself at any time, said reservation being in effect similar to the like provision contained in the instrument effecting the premises involved in this action, and above quoted, and each of the foregoing tracts of land were listed for sale by defendant with the plaintiff before the tract involved in this action was listed.

"That after the listing of the foregoing three tracts as described, and on the same day and as part of the same transaction, it was finally agreed between plaintiff and defendant, on plaintiff's solicitation, that defendant would list with plaintiff for sale premises described in the instrument hereinbefore quoted; and it was further expressly agreed between the parties that a sale of said premises involved in this action, if it were to be made, including the crops grown on said premises for the year 1915, there being growing on said premises about 720 acres of crop, said sale must be made on or before July 1, 1915, and if said sale were not made on or before that date the crops grown and raised upon said premises during the year 1915 were not to be included, and it was in consideration of the price at which said premises were listed that it was mutually agreed that the crops would not be included or would they pass to the purchaser if the sale were made after July 1, 1915.

"It was also mutually agreed between the parties that the said premises involved in this action and property described in the foregoing quoted instrument were not for sale, nor to be sold, separately, but either in one sale of all of the premises listed on said day or else after each of the other three described tracts listed first had been sold; and it was in consideration of this agreement that the defendant did list the property involved in this action at the price stated in said instrument.

"That it was the intention of both parties to incorporate fully all of the foregoing agreement with reference to the property involved in this action in the listing agreement above quoted, but through mutual mistake on the part of plaintiff and defendant said instrument and memorandum of the terms of said listing agreement did not embody the real agreement had between the parties in this, that said instrument omitted to recite the agreement made to the effect that the crops for the 1915 season were not to be included unless said premises were sold before July 1, 1915; and further omission was made in not embodying in said instrument the real agreement of the parties, to the effect that the premises involved in this action were not to be sold separately or until after each of the other three tracts had been sold; and that both plaintiff and defendant were mistaken in supposing and believing that said instrument did incorporate each and all of the foregoing provisions in accordance with the true intent of the parties.

"That on or about July 1, 1915, plaintiff solicited of the defendant an extension of the period of time within which said premises involved in this action might be sold, including the crops for the year 1915, and and on the occasion of said solicitation both parties are found to have been under the belief and mutual mistake in supposing that the instrument of listing hereinbefore quoted in so far as it related to the crops grown on the premises during the 1915 season had expired on July 1, 1915; and on or about said date defendant acceded to plaintiff's request for an extension of said time for a period of three days after July 1, 1915, and granted plaintiff three days further time in which to sell said premises including the crops for the 1915 season; that thereafter, and on the expiration of said extension, plaintiff again requested an extension of time, representing to defendant that it had in mind a proposed sale of all of said premises and required a few days further time in which to consummate the same, and thereupon again plaintiff and defendant agreed for a few days, further extension, in consideration of which agreement and concession on the part of the defendant plaintiff agreed to reimburse defendant for any improvements that he might make on said premises during the interval of said extension; that thereafter and on or about the 1st day of August, 1915, and long prior to the commencement of this action, it was agreed between

plaintiff and defendant that said time would not be longer extended so as to include the crops for the year 1915, and that it would not be just nor reasonable to expect defendant to take chances any longer of the injury to the crop and the hazard and uncertainty of the harvesting thereof; and that said option in so far as it included the crops on any of the tracts above described had fully expired and was no longer in effect; and on or about the 1st day of August, 1915, the plaintiff's agent, Dryden, was requested by defendant to notify the plaintiff company that said option had expired in so far as it affected the crop, and he would not grant any further or other extensions of time; and upon such request said Dryden informed defendant that he knew that the option had expired, and that it was unnecessary to notify plaintiff; and in order to assure defendant that such notification was unnecessary exhibited a copy of the listing agreement with reference to one of the other tracts of land above described, and called defendant's attention to the provision therein with reference to the expiration of said option on July 1, 1915, in so far as it affected the 1915 crop, and assured defendant that said option in so far as it related to the crops on the premises in question had expired.

"It is further found that the defendant was in complete ignorance of the fact that the listing agreement with reference to the property involved in this action did not contain the provision with reference to the 1915 crops agreed upon between the parties, nor the provision with reference to selling the property involved in said instrument, either together with all of the other property listed or after all of the other tracts had been sold, until shortly before the commencement of this action and until service upon him of the notice of tender hereinafter referred to; and relying upon the agreement between the parties and understood by both of them to be contained in said listing contract, defendant during the month of July, 1915, made improvements upon said premises and expended moneys in maintenance thereof, and in conducting farming operation in reliance upon the new agreement made by the parties for an extension of time on or about July 1, 1915, and that the crops grown upon said premises for the 1915 season, having passed the danger and hazard and risk from the elements and other risks and hazards, had ripened and at the time of the commencement of this action were approximately of the value of $10,000."

It further found "that the defendant, although ignorant of the omissions in the original instrument of listing and ignorant of the fact that it did not contain the real agreement between the parties, was not informed thereof by plaintiff, but on the contrary was informed by plaintiff on or about the 1st day of August, 1915, that said option contract in so far as it concerned the 1915 crops had terminated, and rested in a belief that the same was true, and it was so agreed between the parties on or about the 24th day of August, 1915, until after he had completed the harvesting of the crops on the premises involved in this case, and had expended in good faith large sums of money thereon and had himself borne all the risk and hazard of the elements, believing, as he had a right to believe, that said contract was terminated in so far as it related to the crops, and on or about August 24, 1915, defendant was served by plaintiff with a notice of tender and of deposit in the First National Bank of Devils Lake by plaintiff of the sum of $10,000 as a cash payment on said contract, and notified that plaintiff would accept the terms and conditions thereof and required by said notice to perform the conditions in said contract; also that it was known by plaintiff that said instrument was no longer in force and effect, in so far as it related to the crops, after July 1, 1915, and the further time of the extension granted by defendant, according to the real agreement between the parties, and upon service of said notice defendant learned for the first time of the mutual mistake made in preparing and executing said instrument of listing.

"That no actual consideration was paid by plaintiff nor received by defendant for the execution of said listing agreement involving the property in this case.

"It is further found that the plaintiff made no effort to sell or dispose of the property involved herein separately and distinct from the other tracts of land listed at the same time with plaintiff by defendant.

"It is further found that defendant's ignorance of the mutual mistake in said instrument of listing was encouraged and induced by the acts of plaintiff, and that he was not negligent in not knowing of said mistake, and was induced and led by the acts of the plaintiff and its agent at the time of the making of the original listing agreement, to rely upon plaintiff to properly incorporate the real agreement in the written instrument, and supposed that it had been done; and by the

subsequent acts of plaintiff in asking an extension of time as above found defendant was encouraged to continue in the belief that the said instrument executed and delivered by him on April 5, 1915, did conform to the real agreement between the parties; and by the further act of the plaintiff, at the time of the last extension which was granted by defendant had expired, in exhibiting to defendant one of the other listing agreements in which the crop clause was contained, defendant was either intentionally, or through a like mistake on plaintiff's part, led to believe that said instrument embodied the real agreement between the parties, and because of plaintiff's said acts upon which defendant relied the court finds that he was not negligent in not knowing of the mistakes which existed in the original instrument of listing."

*Flynn & Traynor,* for appellant.

The adding of the name of a witness to a contract is not a material alteration thereof. 2 C. J. 1207; Canfield v. Orange, 13 N. D. 622, 102 N. W. 313.

One who negligently signs a contract without reading it, when he can read and has the opportunity to read it, but relies on statements of the other party, is not entitled to have it reformed, or set aside for fraud, where he had no right to rely upon the statements of the other party. Kimmell v. Skelly, 130 Cal. 555, 62 Pac. 1067; Funded Debt v. Younger, 29 Cal. 172; Hawkins v. Hawkins, 50 Cal. 558.

The unsupported evidence of the party seeking reformation alone is wholly insufficient where such evidence is expressly contradicted by the other party. 34 Cyc. 984; Fritz v. Fritz, 94 Minn. 264, 102 N. W. 705; Kinyon v. Cunningham, 146 Mich. 430, 109 N. W. 675; Wilcox v. Swecker, 129 Iowa, 151, 105 N. W. 392; Bushert v. A. W. Stevenson Co. — Iowa, —, 113 N. W. 916; Chapman v. Dunwell, 115 Iowa, 533, 88 N. W. 1067; Miles v. Shreve, 179 Mich. 671, 146 N. W. 374; Messer v. Baldwin, 262 Ill. 48, 104 N. E. 195; Lines v. Willey, 253 Ill. 440, 97 N. E. 843; Stewart v. McArthur, 77 Iowa, 162, 41 N. W. 604; Des Moines v. County Agri. Soc. v. Tubbessing, 87 Iowa, 138, 54 N. W. 68; Hoyer v. King, 101 Iowa, 363, 70 N. W. 695; Marshall v. Westrope, 98 Iowa, 324, 67 N. W. 257; Roundy v. Kent, 75 Iowa, 662, 37 N. W. 146; Metropolitan Loan Asso. v. Esche, 75 Cal. 513, 17 Pac. 675; Comp. Laws 1913, § 7207; 34 Cyc. 989.

The failure of a man who can read, to read his contract before he signs, especially where there is no confidential relation or trust between him and the other party, is such negligence as will defeat his right to reformation. 34 Cyc. 949; Weltner v. Thurmond, 17 Wyo. 268, 129 Am. St. Rep. 1113, 98 Pac. 590, 99 Pac. 1128; Grieve v. Grieve, 15 Wyo. 358, 9 L.R.A.(N.S.) 1211, 89 Pac. 569, 11 Ann. Cas. 1162; Banfield v. Banfield, 24 Or. 571, 34 Pac. 659; Grant Marble Co. v. Abbot, 142 Wis. 279, 124 N. W. 264; Mitchell v. Holman, 30 Or. 280, 47 Pac. 616; Sayre v. Moir, 68 Or. 381, 137 Pac. 215; Carlson v. Druse, 79 Wash. 542, 140 Pac. 570.

The fact that the contract is signed by only one party does not prevent specific performance. Comp. Laws 1913, § 7195; Merritt v. Adams County, Land & Invest. Co. 29 N. D. 496, 151 N. W. 11; Beddow v. Flage, 22 N. D. 53, 132 N. W. 637; Kerr v. Moore, 6 Cal. App. 305, 92 Pac. 107.

Nor does it make any difference that there were crops and personal property included in the contract. 36 Cyc. 564; Fleishman v. Wood, 135 Cal. 256, 67 Pac. 276; Young v. Porter, 27 Wash. 551, 68 Pac. 362; Brown v. Smith, 109 Fed. 26; Comp. Laws 1913, §§ 7192, 7201; 36 Cyc. 605.

*Middaugh & Hunt,* for respondent.

Parol evidence is admissible to show or prove mistake of fact in the making of a contract. Newton v. Wooley, 105 Fed. 541; Federal Oil Co. v. Western Oil Co. 57 C. C. A. 428, 121 Fed. 674, 22 Mor. Min. Rep. 429; 36 Cyc. 605, 608.

Unilateral mistake of defendant not caused or contributed to by plaintiff has frequently been admitted as a defense, when to enforce the contract would be harsh and unreasonable. 36 Cyc. 606; Bear Track Min. Co. v. Clark, 6 Idaho, 196, 54 Pac. 1007; Godwin v. Springer, 233 Ill. 229, 84 N. E. 234; Jones v. Prewitt, 128 Ky. 496, 108 S. W. 867; Berry v. Frisbee, 120 Ky. 337, 86 S. W. 558; Aiple-Himmelmann Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S. W. 480, 14 Ann. Cas. 652; New York Brokerage Co. v. Wharton, 143 Iowa, 61, 119 N. W. 969; Andrew v. Whitwer, 3 Neb. (Unof.) 55, 90 N. W. 924; Marks v. Gates, 14 L.R.A.(N.S.) 317, 83 C. C. A. 321, 154 Fed. 481, 12 Ann. Cas. 120; King v. Hamilton, 4 Pet. 311, 327, 7 L. ed. 869, 874; Willard v. Tayloe, 8 Wall. 567, 19 L. ed. 501; Pope Mfg.

37 N. D.—9.

Co. v. Gormully, 144 U. S. 224, 236, 36 L. ed. 414, 419, 12 Sup. Ct. Rep. 636.

There is a distinction between an action for specific performance and also between the facts which would warrant a court of equity to grant specific performance, and facts which would induce a court to grant to defendant in such action the remedy of reformation.    Cathcart v. Robinson, 5 Pet. 264, 8 L. ed. 120; Newton v. Woodley, 105 Fed. 541.

Equity will act in either case where the mistake is mutual, or where it is unilateral and there is fraud, or inequitable conduct, on the part of the other party.    34 Cyc. 907, 920, 921, and cases cited; McCormick Harvesting Mach. Co. v. Woulph, 11 S. D. 252, 76 N. W. 939; James v. Cutler, 54 Wis. 172, 10 N. W. 147; Welles v. Yates, 44 N. Y. 525; Winans v. Huyck, 71 Iowa, 459, 32 N. W. 422; Goodenow v. Curtis, 18 Mich. 298; Higgins v. Parsons, 65 Cal. 280, 3 Pac. 881; Day v. Day, 84 N. C. 408; 2 Beach, Eq. Jur. 544; Dane v. Derber, 28 Wis. 216; Bencsh v. Travelers' Ins. Co. 14 N. D. 39, 103 N. W. 405.

Equity looks beyond all forms and to the real substance of things. Pyne v. Knight, 130 Iowa, 113, 106 N. W. 505; Lloyd v. Hulick, 69 N. J. Eq. 784, 115 Am. St. Rep. 624, 63 Atl. 616; Smelser v. Pugh, 29 Ind. App. 614, 64 N. E. 943; Walden v. Skinner, 101 U. S. 577, 25 L. ed. 963; American Freehold Land & Mortg. Co. v. Pace, 23 Tex. Civ. App. 222, 56 S. W. 377; Labbe v. Corbett, 69 Tex. 503, 6 S. W. 811; Roberts v. Plaisted, 63 Me. 335; Matlock v. Todd, 19 Ind. 130.


BRUCE, Ch. J. (after stating the facts as above).    After a thorough examination of the record, we concur in the findings of the trial court, and we are satisfied that the defendant was entitled to have the contract reformed so as to contain the provision that the crops would not go with the land unless the sale was consummated before the 1st day of July.    We are satisfied, indeed, that at the same time the defendant signed the contract in question he signed a number of other contracts, and that these contracts contained the provision mentioned, and that the defendant thought and had reason to believe that the one in question also contained that provision.    We are satisfied, also, that the subsequent acts and dealings of the parties were such as to confirm

the defendant in this belief. We are therefore satisfied that the defendant was entitled to have the contract reformed.

As all that the plaintiff has tendered, and now in open court states that all he is willing to pay, is the $10,000, and as he has failed to tender and refused to pay the value of these crops, and has stated in open court that it does not desire specific performance of the contract unless such crops can be recovered, the judgment of the District Court is affirmed.

GRACE, J., being disqualified, did not participate.

ROBINSON, J. (specially concurring). This is an action for the specific performance of a listing land contract. The plaintiff is an irresponsible nonresident corporation, and it never put up a dollar on the contract. That alone is quite enough to show that the plaintiff has no standing in a court of equity.

The land contract is in the form of a sharp listing agreement, such as a party may be induced to sign when he is tricked or hypnotized, or when he has taken leave of his senses. The defendant agrees to list for sale with an irresponsible nonresident corporation, 960 acres of land in Benson county, at the net price of $35 an acre, including a complete farming outfit, and to give the plaintiff the exclusive right of sale or purchase for seven months. Terms of sale, $10,000 cash and balance in five years, with interest. The contract was dated April 5, 1915, and by its terms it purports to give plaintiff the exclusive right of sale or purchase for seven months. The answer avers that it was a part of the listing contract that the sale, if any, must be consummated before July 1, 1915, and it was so understood by both parties,—and such appears to be the fact,—and that on July 1, 1915, the plaintiff requested an extension for three days. That several extensions were granted until the time of harvesting.

It appears that after the defendant had harvested a crop to the value of about $10,000 the plaintiff makes a tender of $10,000, and asks for the crop, the land, and the farming outfit, consisting of a large amount of personal property. Of course Judge C. W. Buttz very justly found against the plaintiff. The case will not bear any discussion. Obviously, it has no equity and no merits. Indeed a party

who asks a court of equity to enforce such a deal well deserves to be sent to jail for contempt. The judgment of the district court is affirmed, with costs of both courts.