FRANK J. KING et al., Appellants, v. WALTER J. GOOD et al., Appellees.

MAY 8, 1928.

*Robertson & Havens,* for appellants.

*J. J. Freidman, D. E. Stuart,* and *Ambrose V. Burke,* for Ethel C. Storie, appellee.

KINDIG, J.—There is involved in this suit the question concerning the prior right to the 1924 rent from certain land in Harrison County. On the one hand, the superiority of the claim is founded upon a clause in a real estate mortgage, while, on the other, it is asserted through the landlord's assignment of the lease.

As an aid to clearness, the positions of the various parties in the court below are here given: Frank J. King, appellant, was plaintiff, and Albert Heistand, Jessie A. Heistand, and Mrs. Amanda Heistand, appellants, were defendants, as were also Walter J. Good and Mrs. Walter J. Good, his wife, appellees. In addition thereto, J. O. Silsby, appellant, was receiver, and Ethel C. Storie, appellee, was intervener.

Chronologically, these are the events: Albert Heistand, appellant, owned this farm April 1, 1924, on which day he and his wife, Jessie A. Heistand, deeded it to the appellee Walter J. Good. At that time, the acreage was incumbered by a first mortgage of $12,000 held by the plaintiff and appellant, Frank J.

King, and, too, there was then a second mortgage incumbrance of $8,000 upon the premises. This latter security was owned by Mrs. Amanda Heistand, appellant, who was the mother of the appellant Albert Heistand.

Immediately after obtaining possession of the real property, Walter J. Good, appellee, on the same April first, leased it to Albert Heistand, appellant, for the term of eleven months, expiring February 28, 1925. The rental agreed upon was $1,100, evidenced by a promissory note which Albert and Jessie A. Heistand, appellants, both executed. That negotiable instrument was made payable to Walter J. Good, appellee, on or before February 15, 1925, with 8 per cent interest after maturity. Thereafter, on April 11, 1924, Walter J. Good, appellee, indorsed and transferred said "note" to Ethel C. Storie, intervener, and at the same time assigned to her the written lease above mentioned, for the purpose of securing an indebtedness arising out of a loan from the assignee to the assignor. Then, on the following day, the intervener duly recorded the lease, together with the assignment thereof.

Thus matters rested until August 14, 1924, when Frank J. King, appellant, as plaintiff, commenced this proceeding to foreclose the first mortgage of $12,000. Under that action, a default was entered, November 20th, resulting in a decree of foreclosure, wherein J. O. Silsby, appellant, was designated receiver, "to take immediate possession of said premises and to collect the rent * * * " (and) "to rent" (the same) "upon the best terms and conditions * * * " and "to hold said rents, issues, and profits * * * subject to the further orders of the (district) court." Qualification was duly made by this official agent, and he thus entered upon the performance of his duties.

When testifying at the trial, the "receiver" explained his operations as follows:

"After I was appointed receiver, I went out to the farm where Albert Heistand lived, which is the land described in the foreclosure action. I talked to Mr. Heistand, and told him he was to pay me the rent, and I rented it to him for the same he had rented it from Mr. Good,—that was, for $1,100 rent. This was in the fall of 1924. I showed him the letters of my appointment as receiver, which had been issued to me by the clerk of this court. Albert Heistand paid me $1,100 rent for said prem-

ises for 1924. He paid it to me in February, 1925. He paid that rent to me five or six days before I saw the intervener at that public sale in February, 1925."

To the same effect is the testimony of Albert Heistand, appellant, who declared:

"He [the receiver] said I would have to pay the rent over to him, and he was to take care of the place from then on. I would have to re-rent it of him. That Mr. Good [appellee] had nothing more to do with it after the receiver was appointed. That did away with Mr. Good.

"Q. What did he say as to the amount of the rent he would let you have the place for? A. For the same amount that Mr. Good had promised to let me have it for,—$1,100. Q. What did you say to him, if anything, about paying him the rent? A. I told him I would pay him the rent."

Three or four days later, on February 17, 1925, Ethel C. Storie, the intervener and appellee, demanded this "rent" of Albert Heistand, appellant, at which time he told her that the money had already been paid to the receiver; whereupon, this intervener interviewed the receiver with reference to the matter, and requested that he pay her the "rent" collected from Heistand. Replying to that demand, this officer of the court stated: "Well, I cannot pay anything, only through order of court." Accordingly, on March third thereafter, J. O. Silsby, as receiver, filed with the clerk of the trial court his first report, setting forth the collection of the $1,100 in "rent," and then recommending the payment thereof to Frank J. King, appellant, to cover: First, a deficiency still due after the foreclosure sale; second, certain real estate taxes not included in the previous judgment; and third, attorneys' and receivership fees. No mention was made in this account and application concerning the demand of the intervener, and the court's action in approving the receiver's statement and allowing him to make the desired distribution was in total ignorance of intervener's rights. Moreover, such judicial action was entirely ex-parte, because no notice of any kind was served upon the intervener, and she had no opportunity to protect her rights.

Consequently, Ethel C. Storie, on April 30th following, filed her petition of intervention, asking that the receiver account to her for the proceeds of the "rent," because: First, the

pretended payment thereof by that official agent to King was through a conspiracy formulated on the part of those men, with the avowed purpose and intent of defeating the rights of the intervener in the premises; second, the appellant King, at the time he instituted his suit for the foreclosure and asked for the appointment of the receiver, had at least constructive notice of intervener's rights, because she had timely and properly recorded the lease and assignment; and third, the receiver also had such notice when he took possession of the controverted money, as well as the actual knowledge of intervener's interests, before paying it over.

By way of answer to this petition of intervention, appellants interposed: First, a general denial; second, the defense of fraud perpetrated by Walter J. Good in procuring deed to the real estate from Albert Heistand, so that the latter was entitled to offset, against the intervener, claims and demands held by him against Good; third, the demand that the original mortgage be reformed so that there be eliminated therefrom the words "subject to," and substituted in their place the word "assumed," in relation to the incumbrances above mentioned; fourth, the inconsistent prayer that the cause be transferred from equity to law; and fifth, lack of good faith in making and receiving the assignment.

Upon those issues, evidence was introduced before the trial court, and on March 9, 1927, that tribunal decided for the intervener, and gave her judgment against the receiver for the amount claimed. Error is predicated upon this, and because thereof appellants demand a reversal.

I. Fraud, as pleaded by appellants to defeat appellee's claim, is not supported by the record. Evidence is necessary to establish such defense. It is not presumed.  *Smith v. Smith*, 206 Iowa —; *Andrew v. Darrow Tr. & Sav. Bank*, 205 Iowa 244.

We have carefully read all the evidence bearing upon this subject, and are compelled to conclude that the finding of the district court in this regard is fully sustained, and appellants, therefore, have no basis for complaint.

II. So, too, sufficient proof is essential for reformation. Such is true whether the ground for this relief be fraud or mis-

 take. *Rankin v. Taylor*, 204 Iowa 384. What was said in the *Rankin* case applies here. Our language there was:

"Reformation of a written instrument is to be made only when there is proof that the intention of the parties was to make an agreement such as it is sought to have established, and that said intention was frustrated either by fraud, accident, or mutual mistake. * * * Evidence required in such instance must be clear, satisfactory, and convincing. * * * Necessity of the occasion has not been met where the evidence is in equipoise or where there is a mere preponderance in favor of the party claiming reformation."

Necessarily, then, because of the insufficiency of evidence produced by appellants for this purpose, their cause, so far as this point is concerned, must fail; for little, if any, testimony was offered on this phase of the litigation.

III. Equally without merit is appellants' grievance based upon the district court's failure to transfer this matter from equity to law. Originally, the case was brought in equity, and  the receivership proceeding was pending on that side of the calendar. And the very nature of the redress sought by the intervener is an accounting by the receiver, who is an arm of the court in an equity cause. Furthermore, appellants themselves in the present contest asked, in their own behalf, for reformation of a written instrument, which remedy in itself calls for equity jurisdiction.

IV. Even if the above and foregoing were true, the appellants further argue that, nevertheless, the judgment of the district court cannot be sustained, for the reason that the intervener has not shown that the assignment of the lease from appellee Good to her was in good faith and for a valuable consideration.

With this proposition we are inclined to disagree. Within the record there appears clear and ample evidence of this transfer, its good faith, and the "consideration" supporting the same. Basis for that business transaction was a loan of money from the intervener to appellee Good, and the reason for the conveyance was to furnish collateral security. Manifestly, appellee Good owed the intervener the money at the time of the deal between them, and has ever since continued so to do.

Wherefore, at the date of the trial, the obligation was due and unpaid, and the pledge agreement still in full force and effect.

Hence, reason for reversal does not appear.

V. Primarily, appellants' hope for a reversal is because of the superiority of Frank J. King's title to the 1924 "rent" money through the receivership. Their principal fortification in this civil battle is the order of the district court appointing the receiver and authorizing him to re-rent.

Protected in this manner, appellants insist that they are invulnerable to intervener's attacks. For authority to sustain their position, appellants cite *Browne v. Willis*, 199 Iowa 453, and *Keenan v. Jordan*, 204 Iowa 1338. Briefly stated, we held in *Browne v. Willis*, supra, that, where a dispute arises over the right to the rents and profits between a receiver in the mortgage foreclosure on the one hand and an assignee of the landlord on the other, the former will prevail, under the circumstances there involved. Those controlling features were: First, that Browne, the assignee of the rents, did not intervene in the foreclosure suit, but brought an independent action against the tenant, Willis, to recover under the lease; second, the matter was fully adjudicated in favor of the receiver as against the landlord and tenant in the receivership proceedings before the real estate mortgagee, who was the plaintiff in the foreclosure suit, knew of the assignee's interest; and third, due to the foregoing, the assignee, who did not come into the original controversy, but afterwards instituted an independent and collateral suit, was thereby precluded, because of the former judgment in the case, from interfering with the first decision of the court through such secondary proceeding. Remedy in such event, if any there was, would have been in an appeal by a proper party from the first judgment, or the intervention of the assignee of the rent in the receivership proceeding to modify or alter that decree while the court still had jurisdiction thereof and power to change its previous rulings, and could, therefore, have compelled the receiver to make accounting according to the equities of all concerned.

Intervener, in the case at bar, was not a party to the receivership proceeding and the application thereunder for distribution of the $1,100 collected for the 1924 "rent." This speci-

fic part of the facts relating to the judgment naming the receiver is not dissimilar from those situations involved in the *Browne* and *Keenan* cases. But from this point there are distinguishing features. Quite different is the problem now demanding solution. In the *Browne* and *Keenan* cases, the real estate mortgagee knew nothing of the assignee's claim on the "rents" at the time of the foreclosure proceedings and the appointment of a receiver. Here, such knowledge was present, because the lease and the assignment thereof were duly recorded. Foundation for the receiver's title is conceded by him to be the right to possession of the land and the power to evict the tenant; while appellee, the intervener, asserts that she, through the assigned lease, acquired sufficient rights in and over the subject of the tenancy to prevent such eviction, so and in order that the lessee could remain in occupation of the premises and thereby mature and make collectible the "rent."

A result of the receivership proceedings in the *Browne* and *Keenan* cases was an eviction of the landlord's tenant, and a reletting of the farm by the receiver; while, in the case before us, there is no showing that such ouster followed, so far as the assigned 1924 lease is concerned. Reference to the previous statement of facts is quite conclusive at this juncture. Demand for the "rent" was made by the receiver on the tenant. However, there is no fact in the record, as disclosed by a study of the testimony given by the receiver and Albert Heistand, appellants, supporting the conclusion that the tenant was evicted in the year 1924, or that a new lease was made between him and the receiver for that term. Rather, it appears that the new demise, if any there was, covered the 1925 period. Substantiation for this thought can be found in the fact that the crops were mature when the receiver was named, and resultantly it would be rather ridiculous to presume that such court official would even attempt to make a lease authorizing a tenant to raise grain when those products had in fact already been produced, and the time for the growing thereof expired.

Study of the words spoken by the receiver to the tenant fails to reveal any designation of the year 1924. He (the receiver) said:

"I talked to Mr. Heistand [Albert Heistand, appellant], and told him he was to pay the rent to me, and I rented it to

him for the same he had rented it from Mr. Good,—that was, for $1,100 rent. This was in the fall of 1924 * * * ."

Accordingly, the receiver collected the 1924 rent in February, 1925, and the rental agreed upon for the 1925 term between him and Mr. Heistand was also $1,100. With the latter item the intervener is not concerned.

Proof of evicting or reletting, so far as the year 1924 is concerned, is entirely lacking, and all the facts and circumstances involved point to the almost inevitable conclusion that the new lease, if any was made, related to the year 1925.

As before noted, in the *Browne* case, the assignee of the rents did not intervene in the receivership proceedings, but made, in effect, a collateral attack thereon through a different and distinct action; while here, Ethel C. Storie did come into the receivership cause, and this was done by her at a time when the trust was not fully executed, and the process of accounting by the receiver continued to be incomplete. Consequently, the court still had charge of the matter, and was yet in a position to make equitable adjustment of the conflicting claims; and this is especially true in view of the fact that, as will hereafter be more specifically noted, the receiver here, in his transactions with the court, did not reveal to that tribunal all the facts and circumstances relating to the matters involved, but rather, wrongfully prevented the same from being known by the district judge presiding.

VI. After making the foregoing distinction between the *Browne* and *Keenan* cases and the present equity cause, it is next necessary to give force and effect to controlling fundamental principles relating to the primary rights of the parties.

Some doubt is raised in the discussion as to whether or not the phraseology used in the real estate mortgage was sufficient to pledge the rents and profits. We assume, without deciding, that it was. Upon that basis, we observe that such enabling clause relating to those products does not create a lien upon them, or right therein, prior to the foreclosure proceedings and application for the appointment of a receiver. *Keokuk Tr. Co. v. Campbell*, 205 Iowa 414; *Lynch v. Donahoe*, 205 Iowa 537, and cases therein cited. Found within the *Keokuk Tr. Co.* case, supra, is this apt language:

"Up to the time suit is begun, the mortgagor is at liberty

to lease the premises and to sell his right to the rents. Up to that time, the mortgagee, so far as the rents and profits are concerned, is merely a general creditor, without lien on them.''

Further quoting from that case, we find these words:

. ''A pledge of the right of possession is, in substance, a pledge of the rents and profits. *Walters v. Graham,* 190 Iowa 481. A pledge of the right of possession confers upon the mortgagee no greater rights than a pledge of the rents and profits.''

Likewise, in the present case the real estate mortgagee had no interest in the crops, rents, or profits at the time the lease was assigned by appellee Good to the intervener, Ethel C. Storie. Without a lien upon, right, title, or interest in the property thus transferred, the appellant Frank J. King, as mortgagee, could not object to the transaction, and obviously was powerless to prevent the same or interfere therewith after the consummation thereof. *Whiteside v. Morris,* 197 Iowa 211, 213; *Hakes v. North,* 199 Iowa 995. See, also, *Hatcher v. Forbes,* 202 Iowa 64. In *Whiteside v. Morris,* supra, are the following sentences:

''It is obvious that if, at the time the crop was disposed of by the mortgagor, a good title passed to the purchaser, as against the mortgagee, the latter could not subsequently divest it by securing the appointment of a receiver before the crop matured. * * * The appellee acquired no lien by virtue of his mortgage upon the crops, the rents and profits of the mortgaged premises, until foreclosure proceedings were commenced and the receiver was appointed to take possession of them. Prior to that, Ammer, having a right so to do, had disposed of them by assignment to Capps.''

Appropriate language in *Hakes v. North,* supra, is to the following effect:

''We have held heretofore that such a provision [receivership clause] in a real estate mortgage as is above set forth does not operate as a present lien upon the rents, profits, or growing crops of the mortgaged land. Such provision is a part of the remedy provided for the collection of the mortgage, and operates upon the personalty only upon and after the commencement of the foreclosure, and as a part of the procedure. * * * If the provision does not operate as a present lien, it necessarily follows that *it does not operate as an impediment* [the italics are ours] in the way of other disposition by the mortgagor, of such

rents and crops, either by sale or by pledge. In the enforcement of this provision through a receiver, it is to be enforced as against the mortgagor, and to the extent of the then existing rights of the mortgagor to such rents and crops. To say that the mortgagee may assert a seniority as of the date of his mortgage, or that his rights rise higher than those of the mortgagor, and that they may be asserted as against third parties who had already acquired such rents and crops in good faith from the mortgagor at a prior time, is to say that the mortgagee had a lien upon such property all the time. If he had no lien prior to the foreclosure, then necessarily the mortgagor had a right in good faith to dispose of the same. Any other rule would compel a mortgagor to let his land lie idle. He could not rent it, without subjecting his tenant to the risk of repudiation in harvest time. If he has a legal right to rent it, he should be deemed to have an equal right to dispose of the proceeds of the renting.''

See *First Nat. Bank v. Security Tr. & Sav. Bank*, 191 Iowa 842. Accordingly, unless the rule is changed by *Browne v. Willis* and *Keenan v. Jordan*, supra, the transaction between the appellee Good and intervener, Ethel C. Storie, is valid and enforcible. As we have herebefore seen, there is no conflict between the *Browne* and *Keenan* cases and the doctrine announced in *Hakes v. North*, supra. Explanation of the seeming inconsistency can be readily found in the differences before set forth, which, for the sake of brevity, will not be repeated here.

VII. Nevertheless, it is urged that there is no authority under the statute for placing the lease and assignment of record. However, we think there is, under the facts of this case. Material sections of the 1924 Code are:

''10066. All instruments containing a power to convey, or in any manner relating to real estate, shall be held to be instruments affecting the same * * * .''

''10105. No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the recorder of the county in which the same lies, as hereinafter provided.''

Even assuming, as appellants do, that the crops, when the receiver was appointed, were so attached and receiving nourishment from the soil as to be real estate, yet it was proper to place

the instruments of record for the purpose of conveying constructive notice. For authorities more or less in point, see the following: *Weyrauch v. Johnson*, 201 Iowa 1197; *Queal Lumber Co. v. Lipman*, 200 Iowa 1376; *Maine v. Constantine*, 157 Iowa 625; *Golden v. Bilbo*, 192 Iowa 319; *Yule v. Fell*, 123 Iowa 662. We do not hold that the real estate mortgagee, King, as a purchaser for value, was entitled to this constructive notice, but our reference to the recording of the instrument in question was only for the purpose of distinguishing this case from *Browne v. Willis*, supra, and thereby showing that King, when he foreclosed his mortgage and obtained the receiver, did not adjudicate intervener's rights; because, although he knew of her interests, he did not make her a party, and the scope of such adjudication was, therefore, limited.

VIII. Thus, when the receiver took possession of these rents, he had constructive notice of intervener's rights thereto, as well as did the real estate mortgagee, King; and more than this, the official agent of the court, before he attempted to pay over those proceeds to King, had actual and personal information concerning the lease and the transfer thereof to the intervener.

Parenthetically, it is again recalled that, when the receiver accepted the 1924 rent and made application for authority to, and under and by virtue thereof did, pay the same to appellant King, that money actually belonged to the intervener, under the lease, because there had been no eviction of the tenant and re-letting by the receiver, as was the case in *Browne v. Willis* and *Keenan v. Jordan*, supra. Intervener, then, was entitled to notice here of the receiver's contemplated disposition of the funds in question, for her interest therein was known both to the mortgagee and to the receiver. See *First Nat. Bank v. Security Tr. & Sav. Bank*, supra. Because this contemplated action was not made known to her, she was not bound thereby, and for that reason not precluded from insisting on the receiver's accounting at this time.

IX. Appellants, however, attempt to avoid that outcome by invoking the doctrine of former adjudication. Their theory is that this came about when the receiver made his report and application to the district court, and, in accordance with the prayer

therein contained, was authorized by that tribunal to make delivery of the rent funds to appellant King.

Appellee Ethel C. Storie, the intervener, answers this contention of appellants' by suggesting: First, that she was not a party to the proceedings brought by the receiver to obtain the right of delivering those proceeds to appellant King; and second, that such order was obtained by the receiver through fraud upon the court, in that the facts were suppressed regarding the intervener's personal interests in the rents.

Findings of the trial court were in harmony with appellee's claim in this respect, and we concur therewith. Not only did the receiver have actual notice of the intervener's equities, but also, the latter had definitely made demand upon the former for the same. Reply of the receiver to this request was that he could pay out no moneys except upon an order of court; yet, with apparent desire to deceive, he secretly obtained permission to pay those rents to appellant King, and therein intentionally ignored the intervener, knowing, when he did this, that they probably belonged to her. All this the receiver did without revealing to the court, of which he was an arm, the knowledge and information possessed by him concerning intervener's lien upon and property in the litigated funds. Thereby the court was led to believe that appellant King alone had an interest in and the right and title to said personalty.

X. Intervention was made by Ethel C. Storie before the acceptance of the receiver's final report and his release from further duties as such. Application for the payment of the 1924 rents to King was for the purpose of obtaining an intermediate or interlocutory order. Resultantly, at the time the present action was instituted, the receiver was still engaged in the execution of his trust, and his accounts were subject to the control of the supervising court. An approval of a report of this kind, under certain circumstances and conditions, may be set aside. See the following authorities, which somewhat bear upon this point: *Williams v. Des Moines L. & Tr. Co.*, 126 Iowa 22; *In re Receivership of Magner*, 173 Iowa 299; *McLeary v. Doran*, 79 Iowa 210; *In re Estate of Scholes*, 170 Iowa 93; *Graves v. Graves*, 132 Iowa 199; *Conrad v. Hopkins*, 195 Iowa 1162; *Bradbury v. Wells*, 138 Iowa 673.

Other propositions are argued; but, in view of the above

and foregoing discussion, it is not necessary to give them further consideration, because they are not of such nature as to change the result.

The judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.