MERLE O. MILLIGAN CO., INC., Appellee, v. RAY LOTT, Appellant.

No. 43162.

NOVEMBER 12, 1935.

REHEARING DENIED FEBRUARY 21, 1936.

Havner, Flick & Powers, for appellant.

S. B. Allen, for appellee.

ANDERSON, J.—There is practically no dispute as to the facts. The plaintiff appellee, Merle O. Milligan Company, is a corporation engaged in the real estate business in Des Moines, Iowa. One V. O. Marriott was a salesman for the plaintiff with authority as agent to enter into listing contracts, and in May, 1934, met the defendant appellant, Roy Lott, at the home of one Charles Lewis in Des Moines, Iowa. Lott was the owner of a certain tract of real estate in the city of Des Moines and was

desirous of selling it. Marriott, the agent, had a printed form of a so-called listing contract and filled in the necessary blanks including the description of the property. During the course of the conversation between the agent, Marriott, and Lott, Lott advised Marriott that one Hornberger, a tenant of the property in question, was a prospective buyer, and asked if a commission would be due if he, Lott, sold the property to the said tenant, and the agent told him that no commission was to be paid in the event of such a sale. Subsequent to this conversation the contract of listing was completed and signed. The agent, Marriott, testified that: "At the time the subject of selling the property to Mr. Hornberger was brought up and discussed, and it was our intention at that time to make a stipulation in the contract to the effect that Mr. Lott retained the privilege of selling to that one individual. * * * The only reason it did not appear in here is because it was an oversight, visiting together there and we made out this contract and forgot to put it in. * * * We talked over again that he would not be liable in event of the sale to the man in possession of the property. The only reason why it wasn't embodied in the face of the contract was because of inadvertence." This was also the testimony of Mr. Lott, the defendant, and Mr. Charles Lewis, who was present and heard the entire conversation between Marriott and Lott. There is not a word in the entire record disputing this testimony. The contract was returned by the agent to the plaintiff, and the plaintiff's testimony tends to show that they knew nothing about the alleged verbal agreement. The property later was sold by the defendant to the tenant, Hornberger, and this action is prosecuted by the plaintiff to recover commission for the sale. The printed contract of listing provided that a commission should be paid in the event of a sale during the period of six months following the date of the contract, and also provided for the payment of such commission if the property was sold by the owner or any other person during such period.

The defendant alleged in an answer that the property was sold by the defendant, and that at the time of the listing thereof by the plaintiff's agent, and prior to the making of the written contract, that it was agreed between the plaintiff's agent and the defendant that if the defendant sold the property himself no commission would be due, and asks that the written contract be reformed by inserting therein the following, "Provided, how-

ever, if said premises is sold to Herbert Hornberger by the owner, no compensation shall be paid to the broker'', and that said contract as so reformed be established as the contract between plaintiff and defendant, and asked that plaintiff's petition be dismissed.

The plaintiff's reply to the issue of reformation thus raised by the answer is to the effect that the reformation asked by the defendant ''adds to, alters, and varies the terms of the original contract'', and does not create an issue triable in any court, and that the answer does not state a cause of action.

An order was made transferring the case to equity, and before the commencement of the trial a stipulation was entered into between the parties to the effect that unless the contract be reformed the defendant is liable for the payment of the commission, and if the contract be reformed, then there is to be no liability on the part of the defendant. Upon the trial of the case, the evidence introduced disclosed the facts as we have heretofore indicated, and upon submission to the court the court refused to reform the contract and entered judgment against the defendant for the amount of the commission. From this order the defendant appeals.

Appellee contends in support of the ruling of the trial court that it is not bound by the terms of the oral agreement between its agent, Marriott, and the defendant; that such was a personal contract between the agent and the defendant, independent of the written contract. There is no support for this contention in the record. The appellee further contends Marriott was a special agent with limited authority, and that he had no authority to include or agree to include anything in the contract of listing other than was contained in the printed form. This contention is apparently first urged in this court, as there is nothing in the pleadings raising any such issue. However, the cases cited by the appellee do not support this contention. In none of the cases was reformation asked or involved.

The appellant contends that the evidence shows without controversy that through inadvertence, oversight, and mistake the written or printed contract of listing does not contain the real and true agreement between the parties, and that the court erred in denying a reformation.

The law is well settled that a court of equity may reform an instrument when it fails to express the agreement of the

parties, either because of mistake, inadvertence, or accident. King v. Good, 205 Iowa 1203, 219 N. W. 517; Guarantee Mortgage Co. v. Cox, 201 Iowa 598, 206 N. W. 278; Kytlica v. Albertson & Co., 190 N. W. 159; Costello v. Grain Co., 193 Iowa 203, 186 N. W. 842; Merriam v. Leeper, 192 Iowa 587, 185 N. W. 134; Rankin v. Taylor, 204 Iowa 384, 214 N. W. 725; Fitch v. Flinn, 198 Iowa 823, 200 N. W. 402.

Where the writing admittedly does not correctly recite all the terms of the contract of the parties, it may be reformed for mutual mistake. Atkinson v. Darling, 107 Kan. 229, 191 P. 486.

It is true a mistake to justify the reformation of a contract must have been made in drawing the instrument, and not in making the contract out of which it grew; that is, it must occur in reducing to writing the contract upon which the parties had agreed; and in all cases it must relate to something within the contemplation of the parties in making the contract, to something agreed upon, but not contained in the written contract. The right to reform an instrument, however, is not absolute, but within the discretion of the equity court, and depends upon whether the remedy is essential to the ends of justice. The facts and circumstances must be such as constitute an effectual appeal to the conscience of the court and prompt it to interfere by reformation to mitigate the rigorous rules of law. The broad ground upon which a court of equity may reform an instrument is that it does not accurately contain the terms of the agreement between the parties. It must clearly appear that the instrument does not represent the actual agreement of the parties at the time it was executed. It has been held that relief will be granted without regard to the cause or reason of failure to express in the written contract the agreement actually made, whether due to fraud, mistake in the use of language, or any other thing which prevented the expression of the true intention or agreement of the parties. Coleman v. Coleman, 153 Iowa 543, 133 N. W. 755; Stafford v. Fetters, 55 Iowa 484, 485, 8 N. W. 322.

It has frequently been held by this and other appellate courts, that all the agreements made between the parties touching the subject-matter of the contract, when reduced to writing, are presumed to be evidenced by such writing, and in all *law* proceedings it has been held to be the only evidence of the contract between the parties. It cannot be altered, modified, or changed by parole testimony. Equity, however, assumes juris-

diction to reform the writing so as to make it conform to the true and real agreement between the parties. However, before a reformation can be had, it must clearly appear that the minds of the contracting parties did not meet upon the proposition expressed in the writing, and that the actual contract was other and different from that expressed in the writing. It must appear, however, that such is the truth by clear, satisfactory, and convincing evidence. Heard v. Nancolas, 187 Iowa 1045, 175 N. W. 13; Parker v. Bank, 98 Iowa 246, 67 N. W. 245.

We have in the case at bar this sole question: If the clause, or the substance of it, sought to be inserted in the printed contract of listing by reformation was omitted in such written contract by mistake, accident, or inadvertence, then the contract as written was contrary to and did not express the real intention and agreement of the parties, and if this has been proven by clear, satisfactory, and convincing evidence the contract should be reformed. We are of the opinion that it clearly appears, and without any controversy, that it was the express agreement between the parties, that in the event the listed property was sold by the owner to the tenant, Hornberger, no commission should be paid for such sale, and that the contract as written did not express such agreement.

It follows that the contract should be reformed so as to contain the real agreement of the parties. In this view of the case a reversal is ordered and the case remanded to the lower court, with instruction to enter a decree in accordance with this opinion.—Reversed and remanded.

KINTZINGER, C. J., and ALBERT, MITCHELL, DONEGAN, POWERS, HAMILTON, PARSONS, and RICHARDS, JJ., concur.