Harold METZLER, Plaintiff,

v.

R. J. BOLEN, Defendant.
Civ. No. 3143.

United States District Court
D. North Dakota,
Northwestern Division.

Jan. 30, 1956.

Joseph P. Stevens, Minot, N. D., and H. Morris Borstad, Tioga, N. D., for plaintiff.

Frank F. Jestrab, of Bjella, Jestrab & Neff, Williston, N. D., for defendant.

REGISTER, District Judge.

This is an action for reformation of a Contract for Deed, for specific performance and damages. The case was tried to the Court without a jury.

Much of the evidence admitted consists of exhibits.

In September, 1950, plaintiff and defendant entered into a contract for deed whereby defendant agreed to sell, and plaintiff agreed to purchase, the northeast quarter of section 25 in township 155 north of range 95 west of the 5th principal meridian in Williams county, North Dakota. The agreement was dated ——— day of September, 1950, was signed and acknowledged by the plaintiff on September 16, 1950, and thereafter was signed and duly delivered by the defendant. It is in the usual form, except as to the following provision which was typed therein by E. C. Rudolph (attorney for plaintiff) prior to the execution thereof:

"The second party herein shall have unto himself 6½% of 50% of oils, metals, minerals found in, under, or upon said land herein described, but he agrees to join with first party, on the same terms as he (1st party) accepts drilling rights given to any drilling Co., which first party selects."

The "second party" referred to therein is the plaintiff, Mr. Harold Metzler.

Prior to the preparation of this agreement by Mr. Rudolph, the parties hereto had communicated with each other, over a period of years, concerning the purchase or rental by the plaintiff of the land involved in this lawsuit. Plaintiff's Exhibit 7 is an unexecuted Contract for Deed, dated August 16, 1950, on a Minnesota form and in which the sale price is listed as being $960, payable in

five installments. Typed into this unexecuted Contract was the following:

"All minerals, metals and oils are hereby reserved by the first part, with right to explore, dig, and remove the same. But in the event that first party, or his assigns, or heirs, shall remove any of the above metals, minerals or oils, he agrees to pay second party, his heirs or assigns, the sum of $100 per acre for each acre used by first party, or assigns."

The "first party" therein referred to is the defendant in this case, Mr. R. J. Bolen. This proposed Contract was apparently sent to the plaintiff on August 17, 1950, being enclosed with letter of said date—Plaintiff's Exhibit 9. Under date of August 18, 1950, plaintiff wrote a letter (Plaintiff's Exhibit 6) to defendant in which he requested permission to have the agreement prepared on a North Dakota form, and which letter contained the following statement:

"Then I also note that you reserve all the mineral and oil rights, in the land. I feel that I should be entitled to at least some of the oil and mineral rights in the said land, and that we should have this understanding before I sign up the papers."

In previous correspondence no reference was made to oil, gas and minerals, prior to the preparation of said Exhibit 7.

Thereafter, references were made in the correspondence concerning the extent of defendant's title in and to the oil, gas and minerals.

In defendant's letter to plaintiff, dated August 21, 1950, (Plaintiff's Exhibit 8) he stated: "I have been informed by the banking department that the mineral rights—oils—were reserved before they transferred this land to me."

On September 8, 1950, Mr. Rudolph wrote to the defendant (Plaintiff's Exhibit 5) relative to the advisability of using a North Dakota form, requested an abstract of title for examination, and also mentioned that some mineral rights should be transferred to his client, saying "we would like to have this understood in the Contract for Deed".

In defendant's letter of September 9, 1950, (Plaintiff's Exhibit 16) to Mr. E. C. Rudolph (this letter being in reply to Plaintiff's Exhibit 5) appears the following:

"Enclosed is an abstract showing title in the M & M Bank. My deed has been recorded from them. The taxes became delinquent and I purchased the same thru tax title, but the abstractor wrote me that the County retained ½ of the mineral and oil rights. If this land is ever drilled for oil, my understanding is that fee owner must give up to the Co. drilling all but 12½%. I'll give him 6¼%. That is ½ of what I will own if the land is drilled. i. e. ½ of the 12½% int. You can easily check on the abstract, as the title rests largely on mortgages, and the Tax Title cut them all out of having an interest in the title."

This letter (Exhibit 16) was in possession of Mr. Rudolph at the time he prepared the executed Contract for Deed (Exhibit 4) and was the basis for the provisions therein which have hereinbefore been quoted.

Plaintiff in his Complaint and with reference to said quoted provision alleges in part as follows:

"That said provision in said Contract for Deed did not express the true Agreement between the Plaintiff, Harold Metzler, and the Defendant, R. J. Bolen; that the agreement between the Plaintiff and the Defendant was that the Defendant would convey to the Plaintiff all surface rights and an undivided fifty per cent (50%) interest in and to all the oil, gas, metals and other minerals that the Defendant owned in the land described in this Complaint and said Contract for Deed; that at the time said Agreement was entered into it was believed mistakenly by the party preparing the Contract for Deed to be the fact

that Williams County owned 50% of the oil, gas, metals and other minerals in said land.", and

"That said Contract for Deed through and by a mistake of fact does not express the true agreement between the parties to said Contract for Deed."

Plaintiff alleges payment in full of the consideration pursuant to said Contract, and prays for specific performance of the alleged agreement by the execution and delivery of a warranty deed conveying said premises, including 50% of all of the oil, gas, metals and other minerals therein, for damages, and, in the event specific performance is not granted, judgment in the sum of $30,800, together with costs and disbursements.

In his Answer defendant admits the execution and delivery of the Contract for Deed (Plaintiff's Exhibit 4), admits receipt of all monies to be paid under the Contract, but denies all other allegations of the Complaint.

There is no claim by the plaintiff that defendant, R. J. Bolen, was guilty of fraud or misrepresentation. It is noted that, upon request, abstract of title was forwarded by the defendant to plaintiff, that defendant advised the plaintiff as to information he had received from the abstractor, and that full disclosure was made to the best of his knowledge, concerning his title.

Doubtless, at the time of the execution of the Contract for Deed, both parties believed that Williams County did own 50% of all of the oil, gas and minerals in and under said land. The North Dakota statutes, Chapter 136, S.L.1941; now Section 11-2704, NDRC 1943, provided for such a reservation. However, on March 21, 1951, the Supreme Court of North Dakota, in the cases of Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W.2d 132, and Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137, decided that such reservation was void, and that the tax deed from the County to the purchaser conveyed all right, title and interest of the County to the premises involved. Therefore, defendant was actually the owner of all of the oil, gas and minerals in and under said premises.

The sole question involved herein is whether, because of such mistaken belief on the part of both parties to the Contract concerning the extent of defendant's interest in said oil, gas and minerals, plaintiff is entitled to the relief asked for.

Sections 9–0607, 9–0705 and 32–0417, NDRC 1943, provide, respectively, as follows:

"9–0607. Written Contract Supersedes Oral Negotiations. The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

"9–0705. Real Intention to Govern in Cases of Fraud, Mistake, or Accident. When through fraud, mistake, or accident a written contract fails to express the real intention of the parties, such intention is to be regarded and the erroneous parts of the writing disregarded."

"32–0417. Revision of Contract for Fraud or Mistake. When, through fraud or mutual mistake of the parties, or a mistake of one party which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention so far as it can be done without prejudice to rights acquired by third persons in good faith and for value."

■ Where a written contract is complete, clear, and unambiguous, and contains mutual contractual covenants, or the consideration consists of specific and direct promises to do or not to do certain things, such parts cannot be changed by parol, nor new terms added, in the absence of fraud, misconduct, or accident. Allgood v. National Life Insurance Company, 61 N.D. 763, 240 N.W.

874, cited with approval in Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100. See also: 17 C.J.S., Contracts, § 296, p. 695.

■ To justify reformation on the ground of mistake, the mistake must have been made in the drawing of the instrument and not in the making of the contract which it evidences. A mistake as to the existing situation, which leads either one or both of the parties to enter into a contract which they would not have entered into had they been apprised of the actual facts, will not justify reformation. It is not what the parties would have intended if they had known better, but what did they intend at the time, informed as they were. Russell v. Shell Petroleum Corporation, 10 Cir., 66 F.2d 864.

Williston on Contracts, Vol. 3, Sec. 1549, states the rule as follows:

"If, because of mistake as to an antecedent or existing situation, the parties make a written instrument which they might not have made, except for the mistake, the court cannot reform the writing into one which it thinks they would have made, but in fact never agreed to make." See also: Maryland Casualty Co. v. United States, 8 Cir., 169 F.2d 102; Teutsch v. Hvistendahl, 72 S.D. 48, 29 N.W.2d 389; Ives v. Hanson, N.D., 66 N.W.2d 802; and 76 C.J.S., Reformation of Instruments, § 25(b), p. 348.

■ Before reformation of contract can be had there must have been in effect an agreement which written instrument evidences, and mistake relied upon must have been in drafting of instrument, not in making of contract. Rock-Ola Mfg. Corporation v. Filben Mfg. Co., 8 Cir., 168 F.2d 919; Merle O. Milligan Co., Inc., v. Lott, 220 Iowa 1043, 263 N.W. 262; and 45 Am.Jur., Sec. 2, p. 584.

"If the instrument as executed expresses the agreement of the parties, it is no ground for reformation that in arriving at such agreement, both parties labored under the same misconception. * * *" 4 Tiffany, Real Property, Third Edition, Sec. 985, p. 79.

■ A presumption arises from the instrument itself that it fully and clearly sets forth the true agreement of the parties, and where the mistake in such instrument is denied, the burden is on the party alleging the mistake to prove that the written instrument does not fully or truly state the agreement that the parties intended to make—and parol evidence of such alleged mutual mistake, as a basis for the modification of a written instrument must be clear, satisfactory, specific and convincing. Ives v. Hanson, supra; Milligan v. Lott, supra; and Maryland Casualty Co. v. United States, supra.

■■ Not only has the plaintiff failed to sustain his burden of proving mutual mistake by clear, satisfactory, specific and convincing evidence, but, in the opinion of this Court, the evidence is to the contrary. The specific provisions of the contract involved were typed into the contract by plaintiff's attorney, at the time of a conference with the plaintiff, and with plaintiff's full knowledge, understanding and approval. The provisions were definite, specific, unambiguous and in accordance with the specific offer of the defendant contained in the latter's letter. There was no mistake as to the language of the contract; nothing intended to be inserted was omitted by mistake. No mistake occurred in reducing to writing the contract upon which the parties had agreed. The mistake complained of related to the extent of defendant's interest in the oil, gas and minerals—a matter which entered into the minds of the parties in formulating their agreement. However, it is the opinion of this Court that the minds of the contracting parties did meet upon the proposition expressed in the writing, and that the actual contract was as expressed therein; that is, that the written contract itself expressed the true intention of the parties which existed at that time.

The cases of Wilson v. Polsfut, 78 N. D. 204, 49 N.W.2d 102, and M. Sigbert Awes Company v. Haslam, 37 N.D. 122, 163 N.W. 265, cited by the plaintiff, are readily distinguishable from the case at issue, on the facts. In the former case the description of the premises agreed to be conveyed was incorrectly written into the written agreement; reformation was granted on the basis of such mistake. In the latter case cited the Court permitted reformation of a written contract so as to include a provision which had been a part of the actual agreement, but which had, through mistake, been omitted from the written instrument. It appears that the opinions of the courts in said cases are in accord with the general rules stated, and that the reasoning and conclusions of this Court are consistent therewith.

For the reasons hereinbefore stated, judgment will be for the defendant. Findings, Conclusions and Order in accordance herewith will be prepared and submitted by counsel for the defendant. It will be so ordered.