# In the Iowa Supreme Court

No. 23–1845

Submitted November 12, 2025—Filed January 9, 2026

**Mark Fink** and **Stacey Fink,**

Appellees,

vs.

**Donald Lawson** and **Linda Lawson,**

Appellants.

Appeal from the Iowa District Court for Delaware County, Margaret L. Lingreen, judge.

Landowners seek further review of the court of appeals decision that affirmed the district court judgment denying their claimed easement, which provided access to the waterfront. **Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. Mansfield and May, JJ., took no part in the consideration or decision of the case.

Matthew J. Haindfield (argued) of Dickinson, Bradshaw, Fowler & Hagen, P.C., Des Moines, for appellants.

Abram V. Carls (argued) and Joseph J. Porter of Simmons Perrine Moyer Bergman, P.L.C., Cedar Rapids, for appellees.

**Waterman, Justice.**

This dispute over the existence of an easement path granting riverside access requires us to determine whether a district court has the power to reform a faulty easement deed so that it complies with the express intent of the grantor and the actual agreement of the parties. We find that the court has that power, and therefore, we remand to the district court for reformation of the faulty deed.

### I. Background Facts and Proceedings.

Located on the Maquoketa River in Delaware County, Iowa, Lake Delhi is an impounded reservoir[1] that flows through a series of oxbows. Because the reservoir is ideal for fishing, boating, and other water sports, land with river access is prized. But not every property has ready access to the riverbank. Property owners whose land is inland from the river must rely on their neighbors' largesse or some sort of easement if they want to access the water. In many cases, this arrangement works without issue. In this case, it did not.

Since 2002, Donald and Linda Lawson have owned a piece of property (Figure #1 below) situated at the center of a peninsula that extends into Lake Delhi. The Lawsons purchased the parcel—described throughout this case as Lot 21—from the Mary L. Becker Trust.

---

[1]Although referred to as a "lake," Lake Delhi was formed by damming a portion of the Maquoketa River. Technically, then, it is an impounded reservoir. *See* Impoundment, *Webster's New International Dictionary* 1136 (3d. ed. 1961); Reservoir, *Webster's New International Dictionary* 1931 (3d. ed. 1961).



**A. The History of Lot 21.** Lot 21's history is complex. In 1987, the lot—as well as the adjoining lots 19 and 20—belonged to Mary and Larry Becker. Mary and Larry were husband and wife. They lived in a house on a separate lot adjacent to lot 19. In the late 1980s, the Beckers deeded Lot 21 to their son, Randy, who built a house on the property.

In 1998, as part of their estate planning, the Beckers formed mirror-image trusts. Article XII of each trust provided in part: "The initial Co-Trustees of this Trust are Larry D. Becker and Mary L. Becker. Each of the initial Co-Trustees may act independently of the other." Article XIII of the trusts provided in part:

> The Trustee shall have all powers necessary for the proper administration of the trusts created by this Agreement which shall be in addition to those powers provided by the Iowa Probate Code. In extension but not in limitation of any power otherwise possessed by the Trustee, it shall have, without the necessity of notice to or approval of any court or person, the following powers:
>
> . . . .

D. To sell, grant options to buy, convey, transfer, assign, exchange, lease, mortgage, pledge or otherwise dispose of any or all of the properties of the trust estate, including real property, at such prices, on such terms, to such persons, in such portions, and in such manner as the Trustee may in each case deem proper and advisable, and for terms extending beyond the administration of the trusts herein created.

The Beckers then put property into their respective trusts. Meanwhile, Randy had abandoned Lot 21, leaving the house and land vacant.

Sometime in 2002, the Lawsons took an interest in Lot 21. As water sports enthusiasts, the Lawsons were especially interested in purchasing a lot with river access. They visited Lot 21, where the house had fallen into disrepair. Although they were skeptical of that structure, they noticed a well-cleared path (pictured in Figure #2 below) running to the water's edge. According to their trial testimony, this path was a crucial factor in their decision to purchase Lot 21.



Figure #2

EXHIBIT
III - 13

On September 30, to facilitate the sale to the Lawsons, Randy deeded Lot 21 to Mary L. Becker in her capacity as trustee of the Mary L. Becker Trust.

In October, the Lawsons had the property appraised as part of a financing agreement with their bank. The appraiser, Steve Duncan, visited Lot 21, compared it with similar properties, and produced the following map (Figure #3 below), which highlights the path leading from Lot 21 to the lake front:



On November 15, Mary Becker, in her capacity as trustee for the Mary L. Becker Trust, executed two deeds to the Lawsons. The first transferred ownership of Lot 21. The second purported to grant the Lawsons an easement across lots 19 and 20 (see Figure #1 above). The easement deed stated: "Said easement is for the purpose of access on foot or by vehicle to the Maquoketa River by Lawsons, their guests and invitees."

There were several problems with this transfer. First, lots 19 and 20 were owned not by the Mary L. Becker Trust but by the Larry D. Becker Trust.

Second, the legal description of the easement did not fulfill its stated goal because the described strip of land did not reach the river's edge (see Figure #4 below). The described easement path (roughly congruent with the green highlight) is interrupted by parcel P (roughly congruent with the yellow highlight) before it reaches the riverbank.



Third, the easement's legal description identified a strip of land that first passes through an outdoor deck attached to the Lawsons' home and then plunges down a steep embankment, meaning that no portion of the described easement was usable for its stated purpose.

Nevertheless, the Lawsons, by traversing the Beckers' land, specifically the well-trodden path they had seen when visiting Lot 21, had no issue reaching the riverbank. They mowed the path, hauled in fill dirt and other materials to improve parts of the path, and registered a dock with the Iowa Department of Natural Resources (DNR). But things changed when new neighbors moved in.

**B. The Finks' Arrival.** By 2015, both Larry and Mary Becker had passed away. In winding down their estate, the Larry D. Becker Trust transferred lots 19 and 20 to XL Investments, LLC, a limited liability company comprising the Beckers' children.

Mark and Stacey Fink were looking for property in the Lake Delhi area and took an interest in lots 19 and 20. Before purchasing the land, Mark had the lots surveyed. His surveyor noted that the Lawsons' easement, as described in the land records, did not reach the riverbank. In April of 2021, XL Investments sold both lots to Mark and Stacey Fink.

Soon after the Finks purchased lots 19 and 20, disputes arose over the existence and scope of the Lawsons' easement. Mark Fink placed "no trespassing" signs on the disputed path; he contacted the DNR, asking it to investigate the Lawsons' dock permit; and, at one point, he heaped brush onto the path, obstructing the Lawsons' river access.

**C. The Lawsuit.** Tensions between the Finks and the Lawsons escalated, and in July of 2021, the Finks sued the Lawsons. The Finks' amended petition sought to: (1) quiet title in favor of the Finks, (2) recover damages for trespass,

(3) recover damages for conversion, (4) recover damages for invasion of privacy, (5) eject the Lawsons from the Finks' property, and (6) enjoin the Lawsons from further use of the disputed property.

The Lawsons answered the amended petition, asserting defenses of express, prescriptive, or modified prescriptive easements. They also argued for an easement by acquiescence, implication, or estoppel. Finally, they counterclaimed with their own action to quiet title for the land composing the easement. The Finks moved for summary judgment on their quiet title claim and asked the court to bifurcate the trial. Under their proposed bifurcation, the Finks would first try their equitable quiet title claim to the bench, then try their trespass claims, which were at law, to a jury. In resistance, the Lawsons asked the district court to reform their easement deed to comport with the express intent of the grantors.

The district court rejected the Lawsons' reformation argument, stating:

> Insofar as the Mary L. Becker Trust did not own the land on which an easement was purportedly granted to the Lawsons in the Easement and Agreement executed November 15, 2002, the Court cannot reform that instrument to grant an easement along the path the Lawsons have actually used to access the Maquoketa River. Reformation is denied.

The court then granted the Finks' motion to bifurcate and granted in part and denied in part their motion for summary judgment, writing:

> Judgment is entered in favor of Plaintiffs Mark Fink and Stacey Fink on their Quiet Title Claim (Count One of their Amended Petition and Jury Demand) and against Defendants Donald Lawson and Linda Lawson on Defendants' affirmative defenses of express easement, prescriptive easement, easement by acquiescence and easement by estoppel, as well as Defendants' defenses of barrment by statute of limitations, equitable estoppel and laches.
>
> . . . Plaintiffs' Motion for Partial Summary Judgment is DENIED IN PART. It is denied as to Defendants' affirmative defenses claiming a modified prescriptive easement and an easement by implication.

The remaining claims were tried to the bench. After trial, the district court issued an order first reiterating its rejection of the Lawsons' express easement defense—and consequently their request for reformation—and then ruling in favor of the Finks. It wrote:

> Upon review of the law and facts, the Court affirms its earlier summary judgment "Motion Ruling" wherein judgment was entered in favor of Plaintiffs as to Defendants' affirmative defenses of express easement, prescriptive easement, easement by acquiescence and easement by estoppel, as well as Defendants' defenses of barrment by statute of limitations, equitable estoppel and laches.
>
> . . . .
>
> . . . The Quiet Title claim at Count One of Plaintiffs' "Amended Petition and Jury Demand" is SUSTAINED; Defendants' Quiet Title Counterclaim is OVERRULED.
>
> Title is quieted in Mark J. Fink and Stacey E. Fink, husband and wife, as joint tenants with full rights of survivorship and not as tenants in common, in the [disputed real estate.]

The Lawsons filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), asking the court to address additional legal elements that the original decree had omitted. The district court enlarged its order to address those elements but left its conclusions undisturbed.

**D. This Appeal.** Defeated at the district court, the Lawsons appealed. We transferred the case to the court of appeals. The court of appeals panel agreed with the district court's analysis of most of the issues in the case; however, it found that the district court erred when it granted summary judgment on the Lawsons' prescriptive easement affirmative defense. Accordingly, the court of appeals affirmed in part and reversed in part the district court's ruling. Both the Lawsons and Finks sought further review, which we granted.

On further review, the Lawsons repeat the following arguments: (1) the district court erred when it refused to reform the Lawsons' easement, (2) the

district court should have adopted and applied the so-called "control test" when evaluating the Lawsons' easement by implication defense, (3) the district court erred when it summarily ruled that the Lawsons' use of the disputed path was not "hostile," (4) the district court misapplied binding precedent when evaluating the Lawsons' modified prescriptive easement claim, (5) the trial court incorrectly granted summary judgment to the Finks with regard to the "definite and certain" element of the Lawsons' easement by acquiescence claim, and (6) the trial court erred when it bifurcated the issues and tried the equitable quiet title claim before the Finks' legal claims for money damages.

For their part, the Finks argue in their application for further review that the court of appeals misinterpreted the district court's final judgment order. Specifically, the court of appeals treated the final order as a recapitulation of the district court's earlier summary judgment ruling. This error, the Finks argue, caused the court of appeals to apply the wrong standard of review. They asked us to clarify the standard before allowing remand for what they argue will be an unnecessary retrial. In the alternative, the Finks ask us to vacate the court of appeals decision and remand the case so that the district court can clarify its holding on the prescriptive easement issue.

Because we find that the reformation issue is dispositive, we do not reach the remaining issues.

## II. Standard of Review.

Quiet title proceedings are equitable in nature. *See* Iowa Code § 649.6 (2021). Therefore, our review is de novo. *Rouse v. Union Township*, 530 N.W.2d 714, 716 (Iowa 1995). "De novo review means we review the entire record and 'decide anew the issues properly preserved for appellate review.'" *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (quoting *Struve v. Struve*, 930 N.W.2d 368, 371

(Iowa 2019)). Although we decide the case anew, we do not start from scratch. *Id.* Instead, we give weight to the district court's findings, especially in matters of witness credibility. *Id.*

### III. Analysis.

The Lawsons argue that the district court and the court of appeals erred when they refused to reform the Lawsons' easement documents to comport with the easement's stated purpose, namely, to grant "access on foot or by vehicle to the Maquoketa River by Lawsons, their guests and invitees."

The Finks countered: first by arguing that the Lawsons failed to preserve error on their reformation argument, and then by contending that the district court correctly held that reformation was unavailable as a remedy in this case. We find that the Lawsons preserved error on their reformation argument and that under these unique facts, the district court and court of appeals incorrectly concluded that they lacked the power to reform the faulty deed. Accordingly, we reverse.

**A. Error Preservation.** We begin our analysis with error preservation. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Here, the Finks moved for summary judgment on the Lawsons' express easement affirmative defense. The Lawsons, in resisting the motion, argued that the district court should reform the faulty easement deed. In its ruling on the motion, the district court rejected the Lawsons' reformation argument. The Lawsons then moved the court, under Iowa Rule of Civil Procedure 1.904(2), to amend its ruling, expressly arguing that the court should reform the easement to cure any legal infirmities in the easement documentation. The court denied

that motion. In a final effort to change the district court's ruling, the Lawsons argued at trial that reformation was an appropriate remedy. In its judgment order, the district court reaffirmed its summary judgment ruling disposing of the Lawsons' express easement defense. Our court of appeals concluded that the Lawsons presented their reformation argument to the district court and that the district court repeatedly ruled on that issue. We agree: the Lawsons preserved error on their reformation argument.

**B. Reformation.** Turning to the merits, "[p]arties seeking to set aside a written instrument affecting real estate bear the burden to establish their right to relief by clear, satisfactory, and convincing proof." *In re Guardianship & Conservatorship of Jorgensen*, 959 N.W.2d 670, 678 (Iowa 2021). Reformation of written instruments generally requires proof "of fraud, deceit, duress, or mutual mistake." *Id.* (quoting Iowa R. App. P. 6.904(3)(*k*) (2021)) "The law is well settled that a court of equity may reform an instrument when it fails to express the agreement of the parties, either because of mistake, inadvertence, or accident." *Merle O. Milligan Co. v. Lott*, 263 N.W. 262, 263 (Iowa 1935). "Where the writing admittedly does not correctly recite all the terms of the contract of the parties, it may be reformed for mutual mistake." *Id.* As we have explained:

> It is true a mistake to justify the reformation of a contract must have been made in drawing the instrument, and not in making the contract out of which it grew; that is, it must occur in reducing to writing the contract upon which the parties had agreed; and in all cases it must relate to something within the contemplation of the parties in making the contract, to something agreed upon, but not contained in the written contract.

*Id.* at 263–64. Of course, not every deed or contract is a candidate for reformation. By circumscribing the grounds upon which a district court can

reform a writing, we avoid turning our district judges into roving revisers:

> The broad ground upon which a court of equity may reform an instrument is that it does not accurately contain the terms of the agreement between the parties. It must clearly appear that the instrument does not represent the actual agreement of the parties at the time it was executed. It has been held that relief will be granted without regard to the cause or reason of failure to express in the written contract the agreement actually made, whether due to fraud, mistake in the use of language, or any other thing which prevented the expression of the true intention or agreement of the parties.

*Id.* at 264. However, before the court can reform a writing, "it must clearly appear that the minds of the contracting parties did not meet upon the proposition expressed in the writing, and that the actual contract was other and different from that expressed in the writing." *Id.* at 264. "In reforming the instrument, the court does not change the agreement between the parties, but changes the drafted instrument to conform to the real agreement." *Wellman Sav. Bank v. Adams,* 454 N.W.2d 852, 855 (Iowa 1990). We will not order reformation when it prejudices innocent third parties. *Orr v. Mortvedt,* 735 N.W.2d 610, 613 (Iowa 2007).

Here, the district court decided that as a matter of law, reformation was unavailable because the modifications the Lawsons requested amounted to a change in the agreement itself, not merely a correction to conform the writing to the agreement. We disagree.

We begin from the premise that "[i]n interpreting a deed the intent of the grantor is the polestar." *Nichols v. City of Evansdale,* 687 N.W.2d 562, 567 (Iowa 2004) (alteration in original) (quoting *Skoog v. Fredell,* 332 N.W.2d 333, 334 (Iowa 1983)). We need not guess what the grantors in this case intended. The easement documents state: "Said easement is for the purpose of access on foot or by vehicle to the Maquoketa River by Lawsons, their guests and invitees." And,

given the almost twenty-year period during which the Lawsons traversed lots 19 and 20 without incident, we can infer that both contracting parties (the Lawsons and the Beckers) had a mutual understanding of the easement's scope; otherwise, the Beckers would have acted to prevent or modify the Lawsons' use of the path. True, the easement deed is infirm in several ways, but each can be cured through reformation.

The first problem with the easement document is that the Mary L. Becker Trust was the grantor, but the Larry D. Becker Trust actually held the servient estate. But as noted above, Mary Becker was co-trustee of the Larry D. Becker Trust, and the trust documents permitted her to act independently of the other trustees and allowed her to unilaterally dispose of property held in either trust. That she mistakenly listed her own trust instead of her husband's amounts to a scrivener's error, which the court can reform. *Coleman v. Coleman*, 133 N.W. 755, 761 (Iowa 1911) (affirming a trial court's reformation of a contract containing a scrivener's error).[2] To be clear, no Iowa court has stated that reformation extends (or does not extend) to erroneously named or omitted parties. But courts in other states have long recognized that power. *See Sound Around, Inc. v. Hialeah Last Mile Fund VII LLC*, 2023 WL 122655, at *5 (S.D. Fla. Jan. 6, 2023) (finding that the court has power to reform a document so as to bind a party who, though supposed to be included, was mistakenly omitted); *Bates v. Alfred F. Steiner Co.*, 278 N.W. 739–40 (Mich. 1938) (upholding a trial court's reformation of a dividend contract that misnamed the obligated party);

---

[2]It may be argued that to change the parties to an agreement is to change the agreement itself. In some cases that is undoubtedly true. Here, though, there are unique facts: the deed contains a clear statement of purpose, the grantor-trusts were identical, the trustees had equal powers within the grantor-trusts, and the trustees could dispose of property without the consent or approval of the other trustee. Not every trust or corporate entity will be in the same position, and courts should exercise caution before changing the parties to a deed or other writing.

*Berg v. Carlstrom*, 347 N.W.2d 809, 812 (Minn. 1984) (en banc) (upholding reformation of an erroneous deed so that it reflected the correct grantor); *Connor & Murphy, Ltd. v. Applewood Vill. Homeowners' Ass'n*, 2009 WL 806774, at *3–4 (Ohio Ct. App. Mar. 30, 2009) (reforming an easement agreement to reflect the correct subsidiary entity); *Wittingham, LLC v. TNE Ltd. P'ship*, 469 P.3d 1035, 1053–54 (Utah 2020) (upholding a district court's finding that a misnaming of the grantor did not void a deed and stating "a court will not invalidate a deed for a technical error in a name when the party to the transaction is clear"); *Myers v. Town of Milton*, 137 S.E.2d 441, 444–45 (W. Va. 1964) (correcting a "glaring" error in a deed that misnamed the grantor corporation).

The second problem with the Lawsons' easement is that the legal description does not comprise a path to the river's edge. In other words, any reformation to effectuate the intent of the easement deed must describe the Lawsons' easement path anew. The district court found that it lacked that power. But where, as here, the parties were mutually mistaken—both believing that the easement description reached the water along a different path—and where the intent of the granting parties is clearly expressed in the deed and where the legal description of the land is clearly erroneous, the court, sitting in equity, may reform the deed to comport with the express intent of the grantor. This power is well recognized. *See Lawrence v. Barnes*, 374 S.W.3d 224, 230 (Ark. Ct. App. 2010) (permitting reformation of a land deed that mistakenly conveyed mineral rights to the grantee); *Massey v. Lewis*, 21 So. 3d 644, 650–51 (Miss. Ct. App. 2008) (" '[I]t is not what description the parties intended to write but what property the parties intended to have embraced in the description they used.' Therefore, the mistake in description in the deed should be reformed to coincide

with the description of the property intended to be conveyed." (quoting *Brimm v. McGee*, 80 So. 378, 381 (Miss. 1918))); *JPMorgan Chase Bank, N.A. v. Gau*, 74 N.E. 3d 721, 725–26 (Ohio Ct. App. 2016) (upholding a trial court's reformation of deeds that did not properly describe the disputed property); *Dyke v. Alleman*, 44 S.E.2d 587, 591–92 (W. Va. 1947) ("An erroneous description embodied in a deed by mistake may be reformed and, in some instances, cancelled in a court of equity, where the deed conveys land not intended to be conveyed."). Indeed, the Restatement (Second) of Contracts § 155, at 406 (A.L.I. 1979) explains:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Here, both the Beckers and the Lawsons mistakenly believed that the legal description identified a different path that extended to the water's edge. And there is no dispute that the Finks knew before purchasing their lots that the Lawsons had a recorded easement and that the described easement path did not follow the well-worn path that provided the promised water access. Because they were aware of the easement's existence and its legal infirmities, the Finks are not bona fide purchasers whom reformation would injure.

The district court erroneously determined that it lacked the power to reform the Lawsons' easement deed. On our de novo review, we find that the Lawsons demonstrated by clear, satisfactory, and convincing evidence that their easement deed contained a mistaken legal description and misnamed the grantor. Therefore, we remand the case to the district court for entry of an order reforming the easement deed so that it comports with the grantor's express intent

and the actual agreement of the Beckers and Lawsons. Specifically, the district court should correct the name of the grantor to "Mary L. Becker, as Trustee for the Larry D. Becker Trust" and correct the legal description on the easement deed to conform to the path the Lawsons have used since 2002 to get from their home on Lot 21 to their dock on the river.

**IV. Disposition.**

For the foregoing reasons, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings consistent with this opinion.

**Decision of Court of Appeals Vacated; District Court Judgment Reversed and Case Remanded with Instructions.**

All justices concur except Mansfield and May, JJ., who take no part.